AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Northern District of New York

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| MICHAEL FISH, | ) Case No. 1:21-MJ-070-DJS | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
Jan 29 - 2021
AT 3 O'CLOCK 59 MINUTES
John M. Domurad, Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **November 29, 2020** in the county of **Albany** in the **Northern** District of **New York**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1503(a) | Obstruction of Justice |
| 18 U.S.C. § 3147 | Committing an Offense While on Release |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Scott Schoenhardt
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/29/2021

*Judge's signature*

City and state: Albany, NY

Hon. Daniel J. Stewart, U.S.M.J.
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Scott Schoenhardt, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1. There is an ongoing criminal case against MICHAEL FISH in the Northern District of New York styled *United States v. Michael Fish*, No. 20-CR-117 (MAD) (the "*Fish* Proceeding").

2. As set forth in more detail below, there is probable cause to believe that FISH has violated 18 U.S.C. § 1503(a) (Obstruction of Justice) and 18 U.S.C. § 3147 (Committing an Offense While on Release) by submitting doctored or outright fake character letters that he intended to be used, and were used, in connection with the *Fish* Proceeding.

## EXPERIENCE

3. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since May 2017. I am currently assigned to the FBI Albany Division Cyber Crime Investigation Task Force. I have received training and investigated a variety of federal crimes involving cyber intrusion and computer fraud. I have experience regarding these federal violations through my daily investigative responsibilities and extensive training. For example, I have attended numerous classes and trainings dealing with computer crimes and fraud, including how computer networks operate, methods employed by criminals to infiltrate computer networks and commit other crimes, the purpose of the intrusions, and the numerous types of fraudulent schemes that perpetrators of computer crimes carry out after gaining access to computer networks.

4. I have conducted numerous complex investigations concerning computer crimes

and fraud, including wire and mail frauds, intrusions (i.e., gaining access to a protected computer or computer network without permission), denial of service attacks (i.e., attempts to make a website, computer, or device unresponsive), the use of botnets (i.e., a group of computers controlled without the knowledge of the computers' owners), the use of bulletproof servers (i.e., servers controlled by administrators who often are non-responsive to law enforcement requests and often host illicit content anonymously), and obstruction of justice.

5. Prior to joining the FBI, I was employed as a police officer with the Chesterfield County Police Department in Virginia for four years. During my law enforcement career, I have been trained in numerous topics including investigation and criminal case prosecution. I have personally conducted and have been involved in numerous investigations that included the execution of warrants involving the search and seizure of electronic media. My education includes a Master of Science in Cybersecurity with a concentration of Digital Forensics and a Bachelor's Degree of Criminal Justice and Political Science with a minor in Computer Forensics.

6. As an FBI Special Agent, I am responsible for conducting criminal investigations of criminal statutes contained in Title 18 of the United States Code, including crimes related to computer intrusions. I am authorized to apply for and execute search warrants and arrest warrants for offenses enumerated in Title 18 of the United States Code.

7. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### *Overview*

8.       On May 19, 2020, FISH pled guilty before this Court in the *Fish* Proceeding to Computer Intrusion Causing Damage, in violation of 18 U.S.C. § 1030(a)(5)(A), Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A. *See* Dkt. No. 3, 20-CR-117. The Court released FISH with conditions—including a prohibition on committing new federal crimes—and he has remained under the supervision of the U.S. Probation Department for the Northern District of New York (the "U.S. Probation Office") since his plea. The Court is scheduled to sentence FISH on January 8, 2021 in Albany, New York. *See* Dkt. No. 13, 20-CR-117. The government filed its sentencing memorandum on December 21, 2020. *See* Dkt. No. 16, 20-CR-117. The defense filed its sentencing memorandum on December 22, 2020. *See* Dkt. No. 18, 20-CR-117.

### *The Phony Character Letters*

9.       On December 29, 2020, the defense filed character letters on the defendant's behalf. *See* Dkt. No. 20, 20-CR-117. Among those character letters is a two-page letter, purportedly from J.C., addressed to the Court (the "2020 J.C. Character Letter"). *Id.* at 1-2. The 2020 J.C. Character Letter begins "Mike Fish has asked me to provide a letter of recommendation in support of his background and character," *id.* at 1, and concludes, "I have every confidence that Mike is not a threat to society, but someone who made his share of mistakes. I wholly believe Mike's positive impact to society thus far serves as testament that his troubles were a matter of isolation and he has the character, work ethic, and skills to remain a law abiding citizen." *Id.* at 2. The signature block contains J.C.'s name, a prior association, and a cell phone number. *Id.* at 2.

10.      On December 31, 2020, I interviewed J.C. J.C. stated that he did not author, review,

or authorize the 2020 J.C. Character Letter. J.C. stated that FISH worked as an intern for him in 2016 and that, in 2016, he wrote a letter of recommendation for FISH (the "2016 J.C. Reference Letter") in connection with FISH's application to a graduate program. J.C. stated that he has had no contact with FISH since 2016. J.C. reviewed a digital copy of the 2016 J.C. Reference Letter in his possession and compared it with the 2020 J.C. Character Letter. *Id.* at 1-2. J.C. confirmed that much of the language in the 2020 J.C. Character Letter mirrored that in the 2016 J.C. Reference Letter but that it differed in several, material ways, including (1) replacing *"Mike Fish has asked me to provide a letter of recommendation in support of his application to the Political Management Masters Program"* with *"Mike Fish has asked me to provide a letter of recommendation in support of his background and character"* and (2) replacing *"I wholly endorse Mike's application to the program and believe that having such a hard working student will benefit your program. As a currently enrolled student in the Political Management Program online I can attest that Mike is admirably suited for the program."* with *"I have every confidence that Mike is not a threat to society, but someone who made his share of mistakes. I wholly believe Mike's positive impact to society thus far serves as testament that his troubles were a matter of isolation and he has the character, work ethic, and skills to remain a law abiding citizen."*

11. On January 1, 2021, I searched FISH's residence pursuant to a federal search warrant. FISH was present and agreed to speak with me about the 2020 J.C. Character Letter. FISH stated that he downloaded the 2016 J.C. Reference Letter from an online portal and then used a cell phone and his grandfather's computer to modify it into the 2020 J.C. Character Letter, which he then caused to be submitted in the *Fish* Proceeding. FISH told me that the 2020 J.C. Character Letter was the only fraudulent character letter he created or caused to be submitted to

the Court. That representation was not true.

12.     In addition to the 2020 J.C. Character Letter, the defense submitted a character letter from L.W. (the "L.W. Character Letter"). *See* Dkt. No. 20 at 3-4, 20-CR-117. L.W. confirmed that L.W. did not author, review, or authorize the L.W. Character Letter. L.W. stated that, in November 2020, L.W. provided a character letter to FISH by emailing it to FISH's Google account. L.W. stated the L.W. Character Letter filed with the Court, however, was a significantly altered version of the original character letter L.W. gave FISH. L.W. provided me with a copy of the original character letter as provided to FISH. The L.W. Character Letter differs in several material ways, including by deleting and replacing paragraphs pertaining to the nature of their relationship and L.W.'s familiarity with FISH, as well as L.W.'s assessment of FISH's dangerousness. For example, the L.W. Character Letter added, without L.W.'s knowledge or endorsement, "Mike's actions are truly speaking louder than his words, and that's what I have always known him for. I have all the confidence in the world when I say that Mike is not a danger to anyone. He is one of the most loving and non-threatening people I could think of." *Id.* at 3.

13.     The defense also submitted a character letter from a Catholic priest, M.F. (the "M.F. Character Letter"). *Id.* at 4-5. M.F., after reviewing a copy of the M.F. Character Letter, confirmed that he wrote a character letter for FISH, but that the M.F. Character Letter had been "substantially altered" and expanded without his permission in material ways. For example, M.F. indicated that the original letter did not discuss counseling or having kept in touch with FISH while the M.F. Character Letter stated that M.F. did counsel and keep in touch with FISH.

14.     The defense also submitted a character letter, purportedly from FISH's adoptive mother, M.M. (the "M.M. Character Letter"). *Id.* at 6. The M.M. Character Letter states, among

other things, that "my son has always been a loving, endearing, and joyful person who has always lit up a room and made a positive impact in every situation he's been involved in. I do not believe he is a risk of ever hurting anybody and has only ever served as a positive and productive contributor to our community." *Id.* But M.M. informed me that she did not write a character letter on FISH's behalf, nor had she seen the M.M. Character Letter. M.M., after reviewing the M.M. Character Letter, also stated the signature on the document was not her signature.

15.     The defense also submitted a character letter, purportedly from the defendant's maternal grandparents, B.M. and M.M. (the "B.M. Character Letter"). *Id.* at 7. The B.M. Character Letter states, among other things, that "Michael has been very open and honest with us about the circumstances of his troubles. Michael shows genuine remorse for his conduct, and it is evident that throughout the course of his successful and accomplished life, these troubles are isolated in nature." The B.M. Character Letter continued, "Michael has never had a history of trouble or has ever caused intentional harm to others. He is a gifted and exceptional young man, and we have the utmost faith he is of no harm to society." *Id.* B.M. informed me that neither he nor his wife, M.M., wrote a character letter on FISH's behalf. B.M., after reviewing the B.M. Character Letter, stated it was entirely fabricated.

16.     The defense also submitted a character letter, purportedly from a former investment client of FISH, D.A. (the "D.A. Character Letter"). *Id.* at 9. The D.A. Character Letter states, among other things, that "I am confident that Mike's temporary mistakes do not define who he really is deep down, nor do I believe he is of any harm to anyone. I trusted Mike with my financial life and future of my family. He has one of the most caring and genuine souls you could come across, and it would be a very sad day to not see his positive impact on the world." *Id.* D.A.

informed me that he never met FISH in person, that FISH was not his financial advisor, and that his interactions with FISH were limited to relocating an account from New York to Maryland. D.A. also informed me that he did not write a character letter on FISH's behalf. D.A., after reviewing the D.A. Character Letter, stated it was entirely fabricated.

## CONCLUSION

17. I respectfully submit that this affidavit establishes probable cause to believe that FISH, in connection with the *Fish* Proceeding, attempted to obstruct justice by submitting these phony character, in violation of 18 U.S.C. § 1503(a), and committed new offenses while on release, in violation of 18 U.S.C. § 3147.

Scott Schoenhardt
Special Agent
Federal Bureau of Investigation

I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on January 29, 2021 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Daniel J. Stewart
United States Magistrate Judge